# IN RE APPEAL OF JEROME C. MEYER AND ANOTHER FROM ORDER OF MINNESOTA MUNICIPAL COMMISSION v. VILLAGE OF WAITE PARK.

152 N. W. (2d) 778.

September 1, 1967—No. 40,553.

*Gordon Rosenmeier* and *John E. Simonett,* for appellants.

*Donohue & Donohue* and *Michael H. Donohue,* for respondent village.

NELSON, JUSTICE.

This is an appeal from an order of the District Court of Stearns County and the judgment entered pursuant thereto affirming an order of annexation of the Minnesota Municipal Commission. The relief sought

is reversal of the trial court's judgment and a remand of the case to the Minnesota Municipal Commission, or, in the alternative, a new trial.

On or about September 14, 1965, a petition signed by 119 of the 199 freeholders of unincorporated lands located in St. Cloud Township, Stearns County, was filed with the Minnesota Municipal Commission and the governing body of the village of Waite Park in St. Cloud Township. The petition constituted an application to annex three parcels of land, consisting of approximately 63 acres and containing about 500 people, to the village of Waite Park, which contains approximately 2,016 people within a land area of 437 acres.[1] Thereafter, during the second of 3 sessions of the hearing before the commission, a counter-petition was presented containing 98 signatures, 50 of which appeared on the original petition. The second petition was, by its terms, against annexation. The commission determined, however, that it had acquired jurisdiction of the proceedings and on February 10, 1966, ordered the annexation. The appeal to the district court followed.

Appellants in this appeal from the district court's affirmance of the order of the commission raise two basic questions:

(1) In an appeal to the district court from an order of the Minnesota Municipal Commission involving questions of fact, where no note of issue has been served and filed, may the district court order the appeal tried out of general term over the objections of a party?

(2) Where, in a proceeding to annex unincorporated land to a municipality pursuant to Minn. St. c. 414, initiated by a petition signed by a majority in number of the landowners in the area to be annexed, a counterpetition signed by 98 landowners, 50 of whom had signed the original petition and purported to withdraw therefrom (leaving less than a majority of landowners on the initiating petition but more than the requisite 20 percent), was presented to the commission at the hearing on the original petition, should the commission, after the hearing and

---

[1] The petition covered (1) land in Oakdale Addition (Blocks 1 through 13); (2) land in Waite Park Acres Addition (Blocks 1 and 2); and (3) the east 104.35 feet of the west 435.98 feet of the north 208.71 feet of NE ¼ NW ¼ sec. 16, T. 124, R. 28, Stearns County.

after deciding to grant the petition, have ordered an election as provided by statute to ascertain whether a majority of the landowners were for or against the annexation?

■ Respondents contend that the court, upon receiving an application for the review of the commission's order under Minn. St. 414.07, was justified in setting the matter for hearing out of general term and without a note of issue, as only issues of law concerning the public interest were involved, and the appeal to the district court was in the nature of a special proceeding. The district court held that the notice of motion for an early hearing was sufficient notice for the extraordinary proceeding brought before it. We agree.

A note of issue was not required in order for the district court to fix the time for hearing and to proceed to the hearing of the appeal. Minn. St. 414.07 provides for a right of appeal to the district court for any person aggrieved by an order of the commission for annexation. The statute sets out the procedure by which any such person can appeal, namely, by making an "application for review" setting out the grounds for review and filing the same with the clerk of district court. Apart from the above requirement of "filing," the statute does not require that the application be served on anyone, nor is there provision for the giving of notice of appeal or of the hearing thereon to anyone. The review or appeal procedure is set up unilaterally. Had there been no intervention by respondents, surely no note of issue would have been required, for there would then be no one upon whom to serve the note of issue. The fact that the respondents became parties to the proceeding by intervention should have no effect on the procedure of the appeal.

If the appellants had the right to review with no requirement of serving a note of issue, certainly the respondents had the same right. This position is concisely and correctly stated by the district court in its memorandum, which reads in part as follows:

"* * * The appeal becomes effectual when the application for review is filed, and there is no reason why an appellant could not, upon filing the application, then, or at any time after, ask a court to attend to

the review as soon as may be done. If an appellant can do that, an intervenor should be able to as well. The intervention supplies adverse parties but not the issues, for they were created by the application for review."

Clearly the district court could hear an appeal of the type here involved out of general term. First, the matter to be reviewed involved questions of law and not questions of fact. The district court noted Rollins v. Nolting, 53 Minn. 232, 54 N. W. 1118, a case involving an appeal from justice court to district court on questions of law only. In that case objection was raised to hearing the appeal before the court in chambers and not at the general term. This court held that the case was properly heard in chambers, construing G. S. 1878, c. 66, § 244, as amended by L. 1868, c. 90, which provided:

"In addition to the general terms the district court is always open * * * for the hearing and determination of all matters brought before the court or judge, except the trial of issues of fact."

We determined that this language was broad enough to include all questions of law, but only such questions. In the present case, considering the holding in the Rollins case and the fact that only issues of law were raised at the hearing of the appeal in the district court, there seems little question that this is a matter which falls under the provisions of Minn. St. 546.06.[2] In addition, if questions of fact had arisen, it is not entirely clear that they could not have been considered by the district court while sitting as a court of review with regard to proceedings had before an administrative tribunal.

Second, it would appear that on the basis of the affidavits presented by the intervenors and the record of the hearing before the municipal commission, it was clearly proper for the district court to find that this matter involved the public interest; that public convenience and necessity demanded an early hearing; and that the matter should be disposed of

---

[2] § 546.06 provides: "Issues of law may be brought on for argument by either party * * * before a judge * * * out of term and within the county; or they may be heard, on like notice, out of term * * *." No note of issue is required for matters heard out of term.

24

as soon as convenient to the court. Thus, the court was within its rights to proceed out of term as provided by § 484.08.[3]

Third, an appeal brought under § 414.07 before the district court is a special proceeding and has been so defined by this court. See, City of Chaska v. Chaska Township, 271 Minn. 139, 135 N. W. (2d) 195. In State ex rel. Burnquist v. Village of North Pole, 213 Minn. 297, 303, 6 N. W. (2d) 458, 461, we said:

"We think the trial court was right in holding that no notice of trial was required, not only for the reasons already stated, but also because Minn. St. 1941, §§ 546.02, 546.05 (Mason St. 1927, §§ 9287, 9289), relates to ordinary suits or actions, not to the special or extraordinary proceeding of *quo warranto* * * *."

Therefore, as the present action was not "ordinary," but "special" in nature, no note of issue was necessary, and the District Court of Stearns County was authorized to set the hearing of this appeal out of general term as it did.

In support of their contention that in the instant case it was necessary to serve and file a note of issue, appellants cite Dr. Ward's Medical Co. v. Wolleat, 148 Minn. 410, 182 N. W. 523; and Anderson v. Connecticut Fire Ins. Co. 231 Minn. 469, 43 N. W. (2d) 807. An examination of those cases indicates clearly that they were ordinary actions involving questions of fact and thus required placing on a general term of the district court for trial by notice of trial and note of issue. These are the type of cases which, as the court said in State ex rel. Burnquist v. Village of North Pole, *supra*, relate to the application of § 546.05, not § 546.06.

■ Appellants maintain that the counterpetition effectively reduced

---

[3] § 484.08 provides: "The district courts of the state shall be deemed open at all times * * * for the transaction of such business as may be presented, including * * * the hearing of matters of law in pending actions and proceedings * * *; and, in addition to the general terms * * *, the judge of the district court * * * may * * * convene the court in actual session during the vacation period on a date named in the order, for the trial of * * * civil actions involving public interest * * *."

the signatures on the original petition to less than a majority, and, thus, the commission should have ordered an election pursuant to § 414.03, subd. 5. However, based on the time and manner in which the petition was presented, the nature of the petition, the intent of the legislature in providing for elections, the discretionary power of the commission, and the standing of appellants to raise the issue of withdrawal, we find that, at the time the withdrawal was attempted, the commission had attained complete jurisdiction together with full and ultimate authority to decide either for or against annexation.

The record shows that the original petition was signed by a majority of the landowners and that on October 13, 1965, within the 30 days permitted by § 414.03, subd. 3, the township of St. Cloud filed its written objections to the annexation. Pursuant to § 414.03, subds. 2 and 3, the commission set the time and place for hearing on the annexation petition. Three sessions were held, wherein the village of Waite Park supported the petition and the township of St. Cloud objected. Between the time of the filing of the petition on September 14, 1965, and the time of the first hearing, November 15, no one of the initiating petitioners had sought to withdraw from the petition, and no such attempted withdrawal was presented to the commission at the first hearing.

That hearing was adjourned, without objection to a continuance, to November 26. The presentation of the withdrawal petition was made at the second session, but was somewhat clouded by indirection. St. Cloud Township submitted the withdrawal petition with the statement, "This recanting by 26 or 27 as it may be and the signature(s) of the others are submitted for whatever value they may be to this commission." The record indicates that no one contended that, because an effort at withdrawal of some of the initiating petitioners had occurred, the commission was without power to order annexation without an election. It is not disputed that if the names of the "recanters" were withdrawn from the initiating petition, then the remaining petitioners would not constitute a majority of the landowners in number within the area to be annexed. The commission, however, by order of February 10, 1966, ordered all of the lands in question annexed to the village of Waite Park without an election.

The district court, noting that "[t]hirty-two of the 'recanters' have intervened in this review, urging affirmance of the order of annexation," concluded that the commission's findings of fact were warranted by the evidence; that the commission's findings of fact justify its conclusions of law and order for annexation; that the commission had jurisdiction to act; that it did not exceed its jurisdiction; and that the order of the commission was not arbitrary, fraudulent, capricious, oppressive, or in unreasonable disregard of the best interests of the territory affected. We can find no error in these conclusions.

The record is clear that it was not until the commission held its second session of the hearings that appellants presented their withdrawal petition. The initial date for the hearing before the commission had necessarily been set before the opening of the hearings. The petition had been filed and passed upon as sufficient in form when the commission scheduled the time for hearing. Having done so, its jurisdiction was complete to proceed with the hearing.

At the second hearing, appellant Math Malisheski, explaining why he had not removed the name of one person who had asked to be removed from his objecting petition, made the statement, "There is a question in my mind as to the legality of taking a name off a petition after it has once been put on." No doubt he also had in mind when he made this statement that a question existed as to the legality of withdrawing a name from the initiating petition, once the commission had taken jurisdiction of the proceedings and was on the way to completing its hearings.

The petition presented by St. Cloud Township did not ask to withdraw but merely objected to the annexation. The recital therein was:

"We the undersigned are property owners in Oakdale Addn. in the Township of St. Cloud, Stearns County, and do not want to be annexed to the Village of Waite Park."

This objecting petition was signed by 98 persons, some 50 of whom had petitioned for annexation and signed the initiating petition. Such objection, however, or testimony in support thereof, would not necessarily be a withdrawal from the initiating process in which some of the objectors had taken part when they signed the initiating petition.

The petitioners in the initiating petition for annexation proceeded pursuant to the provisions of § 414.03, subd. 4. No election is required under subd. 4. Among the provisions contained therein are the following:

"* * * The petition shall be denied if it appears that the primary motive for the annexation is to increase revenues for the annexing municipality and such increase bears no reasonable relation to the value of benefits conferred upon the annexed area. The order of the commission shall be issued within a reasonable time after the termination of the hearing. If the order denies annexation, it shall be final. If the order approves annexation, and fixes a date for an election as provided hereafter in subdivision 5, it shall be an intermediate, nonappealable order."

Section 414.03, subd. 5, providing for an annexation election, sets forth that where the petition for annexation has not been initiated by a majority of the landowners in number within the area to be annexed, the order of the commission affirming the petition for annexation shall fix a date not less than 20 days nor more than 90 days after the entry of such an order when an election shall be held at a place designated by the commission within the area to be annexed. It is clear from the record that the initiating petition in the instant case was not presented under § 414.03, subd. 5.

In In re Dissolution of School Dist. No. 33, 239 Minn. 439, 60 N. W. (2d) 60, this court held, on the issue of the right of a signer to withdraw his name from a petition, that although a petition has been filed with the county auditor any signer thereon has the unqualified right to withdraw his name from the petition—by a proper demand upon the board of county commissioners—at any time before the board has acted upon the petition to the extent of completing an inquiry into, and a determination of, its sufficiency under applicable statutory provisions, but that such right of withdrawal ceases after the board has so acted upon the petition. We also held that when a board of county commissioners is acting in a proceeding for the dissolution, attachment, or consolidation of school districts, it is exercising a legislative function which is not governed by judicial standards and its determinations are subject to

successful attack only when its action is clearly arbitrary, unreasonable, unjust, or against the best interests of the public.

In Miller v. Maier, 136 Minn. 231, 161 N. W. 513, 2 A. L. R. 399, and in In re Establishment of Judicial Ditch No. 75, 172 Minn. 295, 215 N. W. 204, 216 N. W. 229, it was held that signers of a petition could not withdraw therefrom after the court had taken jurisdiction thereof and acted thereon. In the first case the action referred to was a calling of a special term of court to hear the petition involved and the action referred to in the second case was the appointment of an engineer to make a survey of a proposed drainage ditch. In denying the signers' right to withdraw in the Miller case, we stated:

"The filing and serving of the petition, together with the notice, conferred upon the court power to act in the premises, and, after jurisdiction is thus conferred and the court has acted thereon, the jurisdiction cannot be defeated by any number of such petitioners subsequently withdrawing from the petition." 136 Minn. 234, 161 N. W. 515.

In the Miller case it appears that the attempt to withdraw was made 5 days after the date originally set for trial.

In In re Establishment of Judicial Ditch No. 75, *supra*, a petition for a proposed drainage system was signed and filed and a preliminary hearing had on the petition, at which time testimony was taken and an engineer appointed to make a survey and report. The hearing was adjourned to a later date, at which time certain of the petitioners asked leave to withdraw their names from the petition. This court said that the withdrawal came too late, although the petitioners could have dismissed the proceeding in the manner provided by statute, a remedy they had not pursued.

In Seibert v. Lovell, 92 Iowa 507, 61 N. W. 197, it was held by the Iowa court that jurisdiction attached as of the date the petition was filed rather than as of the date the county board of supervisors determined its sufficiency and that jurisdiction was to be determined from the petition as filed and not as affected by subsequent acts of its signers. See, Annotation, 126 A. L. R. 1056 to 1058. Compare, Annotation, 27 A. L. R.

(2d) 610; Jefferson Highway Transp. Co. v. City of St. Cloud, 155 Minn. 463, 193 N. W. 960.

In Melby v. Hellie, 249 Minn. 17, 80 N. W. (2d) 849, the board of county commissioners had before it a petition for merger of school districts. In holding that the attempt to withdraw in that case came too late, this court, quoting from In re Dissolution of School Dist. No. 33, 239 Minn. 439, 450, 60 N. W. (2d) 60, 67, stated (249 Minn. 19, 80 N. W. [2d] 851):

" '* * * [T]he right of a signer to withdraw his name from a petition ceases to exist the moment the board of county commissioners exercises any action in reliance upon the jurisdiction conferred by the petition.'

"Appellant admits that this rule is contrary to his position here but urges us to overrule the decision. We think that the rule established is a workable and practical solution of this problem and that it should be adhered to. The attempt to withdraw here came after the county board had acted upon the petition; hence it was too late."

In Sullivan v. Joint Independent Consol. School Dist. No. 102, 251 Minn. 378, 88 N. W. (2d) 1, a petition for consolidation was filed November 28, 1955, and on the same day the county superintendent of schools approved the petition and ordered an election to be held on December 12, 1955. On December 3, two of the signers of the petition in District No. 5 filed an unacknowledged written instrument purporting to withdraw their names from the petition. On December 6 they filed a similar instrument which had been acknowledged on December 5. It was conceded that if they were permitted to withdraw, the petition would not contain the requisite number of signers. Appellants in that case contended that those signing the petition should be permitted to withdraw any time prior to the election. However, this court said (251 Minn. 383, 88 N. W. [2d] 5):

"* * * This question has already been determined adversely to appellants' contentions in In re Dissolution of School Dist. No. 33, 239 Minn. 439, 60 N. W. (2d) 60, where we held that it is too late to withdraw once the county board has acted on a petition for dissolution under

§ 122.28. No good reason exists for adopting a different rule in a proceeding for consolidation under the sections here involved. We therefore hold that, when the county superintendent has acted upon the petition, it is too late to withdraw."

It is made clear by our decisions cited herein that, while, up to a point, an initiating petitioner might withdraw, when the attempt occurs, as it has in the instant case, after the commission has determined the sufficiency of the petition to invoke its jurisdiction, and after it has taken substantial steps in exercise of that jurisdiction, the time in which a petitioner can withdraw as of right has passed. Clearly, the act of the commission in refusing to recognize withdrawal was both reasonable and lawful. Surely, it cannot be said that the commission acted unreasonably or without authority of law in refusing to recognize the attempt to withdraw at the stage at which withdrawal was sought.[4] Cf. Chadwell v. Cain, 169 Ohio St. 425, 160 N. E. (2d) 239.

Finally, the district court in its memorandum stated:

"* * * [I]t cannot be said that appellants were prejudiced by disallowance of the attempted withdrawal of November 25, because before then, annexation was required by law, and had been initiated by a sufficient number that no election was required. Annexation was required when it appeared that the property was urban in character."

We think it clear upon the record herein that any attempt at withdrawal came too late. The decision of the district court on appeal is affirmed.

Affirmed.

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.

---

[4] Opinion Attorney General, No. 484-E-1, April 23, 1932.